Michael Schumacher (#262403)
**RIGRODSKY & LONG, P.A.**
155 Jackson Street, #1903
San Francisco, CA 94111
Telephone: (415) 855-8995
Facsimile: (302) 654-7530
Email: ms@rl-legal.com

*Attorneys for Plaintiff*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HA TRUONG, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BLACKHAWK NETWORK HOLDINGS, INC., ANIL D. AGGARWAL, RICHARD H. BARD, THOMAS BARNDS, STEVEN A. BURD, ROBERT L. EDWARDS, MOHAN GYANI, PAUL HAZEN, ROBERT B. HENSKE, TALBOTT ROCHE, ARUN SARIN, WILLIAM Y. TAUSCHER, and JANE J. THOMPSON,<br><br>Defendants. | Case No. _____<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>JURY TRIAL DEMANDED |

Plaintiff, by and through his attorneys, alleges upon personal knowledge as to himself, and upon information and belief based upon, among other things, the investigation of counsel as to all other allegations herein, as follows:

## SUMMARY OF THE ACTION

1. This action stems from a proposed transaction announced on January 16, 2018 (the "Proposed Transaction"), pursuant to which Blackhawk Network Holdings, Inc. ("Blackhawk" or the "Company") will be acquired by affiliates of Silver Lake and P2 Capital Partners.

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

2.      On January 15, 2018, Blackhawk's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with BHN Holdings, Inc. ("Parent") and BHN Merger Sub, Inc. ("Merger Sub").  Pursuant to the terms of the Merger Agreement, shareholders of Blackhawk will receive $45.25 in cash for each share of Blackhawk they own.

3.      On February 16, 2018, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

**PARTIES AND RELEVANT ENTITIES**

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Blackhawk common stock.

9. Defendant Blackhawk is a Delaware corporation and maintains its principal executive offices at 6220 Stoneridge Mall Road, Pleasanton, CA 94588. Blackhawk's common stock is traded on the NasdaqGS under the ticker symbol "HAWK."

10. Defendant Anil D. Aggarwal ("Aggarwal") is a director of Blackhawk.

11. Defendant Richard H. Bard ("Bard") has served a director of Blackhawk since October 2014.

12. Defendant Thomas Barnds ("Barnds") has served as a director of Blackhawk since February 2017.

13. Defendant Steven A. Burd ("Burd") has served as a director of Blackhawk since August 2007.

14. Defendant Robert L. Edwards ("Edwards") has served as a director of Blackhawk since July 2008.

15. Defendant Mohan Gyani ("Gyani") has served as a director of Blackhawk since August 2007.

16. Defendant Paul Hazen ("Hazen") has served as a director of Blackhawk since August 2007.

17. Defendant Robert B. Henske ("Henske") has served as a director of Blackhawk since April 2017.

18. Defendant Talbott Roche ("Roche") has served as Chief Executive Officer ("CEO") since February 2016 and President of Blackhawk since November 2010.

19. Defendant Arun Sarin ("Sarin") has served as a director of Blackhawk since August 2009.

20. Defendant William Y. Tauscher ("Tauscher") has served as a director of Blackhawk since 2007 and was appointed Chairman of the Board in August 2009.

21. Defendant Jane J. Thompson ("Thompson") has served as a director of Blackhawk since October 2014.

22. The defendants identified in paragraphs 10 through 21 are collectively referred to herein as the "Individual Defendants."

23. Non-party Silver Lake is a global leader in technology investing.

24. Non-party P2 Capital Partners is a New York-based investment firm that applies a private equity approach to investing in the public market.

25. Non-party Parent is a Delaware corporation and a party to the Merger Agreement.

26. Non-party Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Blackhawk (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

28. This action is properly maintainable as a class action.

29. The Class is so numerous that joinder of all members is impracticable. As of January 12, 2018, there were approximately 55,824,265 shares of Blackhawk common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

30. Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

31. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

32. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

33. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

34. Blackhawk is a leading prepaid payment network utilizing proprietary technology to offer a broad range of prepaid gift, telecom, and debit cards, in physical and electronic forms, as well as related prepaid products and payment services in the United States and 24 other countries.

35. According to its website, the Company believes its extensive network provides significant benefits to its key constituents: consumers who purchase or receive the products and services it offers; content providers who offer branded gift cards and other prepaid products that are redeemable for goods and services; distribution partners who sell those products; and business clients that distribute the Company's products as incentives or rewards, or offer its incentive platform to their employees or sales forces.

36. For consumers, Blackhawk provides convenience by offering a broad variety of quality brands and content through physical and digital retail distribution locations or through loyalty, incentive, and reward programs offered by the Company's business clients.

37. For the Company's content providers, the Company drives incremental sales by providing access to millions of consumers and creating new customer relationships.

38. For its retail distribution partners, Blackhawk provides an important product

category that can drive incremental store traffic and customer loyalty.

39.  For the Company's business clients, it provides a wide array of services, software, and prepaid products to enhance their customer loyalty, sales channel incentive, and employee reward programs.

40.  Blackhawk's technology platforms allow the Company to efficiently and seamlessly connect its network participants and offer new products and services as payment technologies evolve.

41.  On January 15, 2018, the Individual Defendants caused the Company to enter into the Merger Agreement.

42.  Pursuant to the terms of the Merger Agreement, shareholders of Blackhawk will receive $45.25 in cash for each share of Blackhawk they own.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

43.  Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

44.  The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

45.  First, the Proxy Statement omits material information regarding Blackhawk's financial projections and the valuation analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Sandler O'Neill & Partners, L.P. ("Sandler O'Neill").

46.  The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.  Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

47. With respect to the Company's financial projections, the Proxy Statement fails to disclose: (i) the line items used to calculate and adjustments made in calculating Adjusted EBITDA, Adjusted Operating Revenues, Adjusted Net Income, and Adjusted Earnings Per Share; (ii) projected cash flows and underlying line items; (iii) the projections for Grass Roots Meetings & Events Limited and Cardpool, Inc.; and (iv) a reconciliation of all non-GAAP to GAAP metrics.

48. With respect to Sandler O'Neill's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the specific inputs and assumptions underlying the discount rate of 11.27%; and (ii) Sandler O'Neill's basis for applying a range of enterprise value/Adjusted EBITDA multiples from 10.0x to 14.0x and assuming that Blackhawk's compound annual growth rate of EBITDA from 2018 to 2021 ranged from 5.00% to 15.00%.

49. With respect to Sandler O'Neill's Comparable Company Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for the companies observed by Sandler O'Neill in the analysis.

50. With respect to Sandler O'Neill's Analysis of Precedent Merger Transactions, the Proxy Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Sandler O'Neill in the analysis.

51. With respect to Sandler O'Neill's Public Company Premium Analysis, the Proxy Statement fails to disclose the transactions observed by Sandler O'Neill in the analysis as well as the premiums paid in such transactions.

52. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Reasons for the Merger; Recommendation of the Blackhawk Board of Directors; (iii) Certain Blackhawk Unaudited Prospective Financial Information; and (iv) Opinion of Blackhawk's Financial Advisor.

53. Second, the Proxy Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

54. Specifically, the Proxy Statement fails to disclose the timing and nature of all communications regarding future employment and directorship of the Company's officers and directors, including who participated in all such communications.

55. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

56. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Reasons for the Merger; Recommendation of the Blackhawk Board of Directors; and (iii) Interests of Blackhawk's Directors and Executive Officers in the Merger.

57. Third, the Proxy Statement fails to disclose whether the non-disclosure agreement executed by the Company and "Party A" contained a standstill and/or "don't ask, don't waive" provision that is or was preventing Party A from submitting a superior offer to acquire the Company.

58. Without this information, stockholders may have the mistaken belief that, if Party A wished to come forward with a superior offer, it is or was permitted to do so, when in fact it is or was contractually prohibited from doing so.

59. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; and (ii) Reasons for the Merger; Recommendation of the Blackhawk Board of Directors.

60. The above-referenced omitted information, if disclosed, would significantly alter

8
COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

the total mix of information available to Blackhawk's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Blackhawk

61. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

62. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Blackhawk is liable as the issuer of these statements.

63. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

64. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

65. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

66. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

67. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

68. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

69. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

70. The Individual Defendants acted as controlling persons of Blackhawk within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Blackhawk and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

71. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

72. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

73. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

74. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a

direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: March 8, 2018

**RIGRODSKY & LONG, P.A.**

By: /s/ Michael Schumacher
Michael Schumacher (#262403)
155 Jackson Street, #1903
San Francisco, CA 94111
Telephone: (415) 855-8995
Facsimile: (302) 654-7530
Email: ms@rl-legal.com

Brian D. Long
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com

*Attorneys for Plaintiff*

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934